IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| DEKALB FARMER'S MARKET, INC., WOOD'S PRODUCE COMPANY, INC. and PIONEER GROWERS COOPERATIVE,<br><br>                          Plaintiffs,<br><br>v.<br><br>JUAN ANTONIO PACHECO a/k/a JUAN ANTONIO CASTILLO, OSCAR N. COLLAZO, and UNITED PRODUCE, LLC,<br><br>                          Defendants. | Civil Action No. 5:18-cv-00201-D |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR DEFAULT JUDGMENT**

Plaintiffs DeKalb Farmer's Market, Inc. ("DeKalb"), Wood's Produce Company, Inc. ("Wood's"), and Pioneer Growers Cooperative ("Pioneer"), by and through counsel, submit this Memorandum in Support of Plaintiffs' Motion for Default Judgment against Defendants Juan Antonio Pacheco a/k/a Juan Antonio Castillo ("Castillo") and United Produce, LLC ("United") (collectively, "Defendants"), jointly and severally.

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, a party entitled to a judgment by default may apply to the court therefor. Defendant Castillo was served on July 31, 2018, and has failed to plead or otherwise present any defense to the allegations contained in the Second Amended Complaint [Dkt. 20], within the time provided by law, and owes to DeKalb, Wood's, and Pioneer sums certain. Therefore, as explained herein, Default Judgment against Defendant Castillo is appropriate.

Defendant United was served with the Second Amended Complaint on August 16, 2018, but failed to file an Answer until November 28, 2018 [Dkt. 28], approximately three (3) weeks after Plaintiffs had moved for entry of default [Dkt. 24]. On December 3, 2018, United filed a Response in Opposition to Plaintiffs' Motion for Entry of Default [Dkt. 29] that failed to provide any reason for its untimely Answer. The Court subsequently defaulted both Defendants Castillo and United on December 17, 2018 [Dkt. 30]. On January 4, 2018, United moved to set aside the entry of default [Dkt. 31]. As discussed in the Memorandum in Opposition to Defendant United Produce LLC's Motion to Set Aside Entry of Default filed contemporaneously herewith, and specifically incorporated herein by reference, United has failed to establish an acceptable excuse for lapsing into default, or any excuse at all with respect to Plaintiffs Wood's and Pioneer, for its failure to respond to Plaintiffs' Second Amended Complaint and has not demonstrated that it has a meritorious defense to any of the Plaintiffs' claims. Accordingly, Default Judgment against Defendant United is also appropriate.

## NATURE OF CASE AND STATEMENT OF FACTS

DeKalb is a licensed produce dealer under the Perishable Agricultural Commodities Act, 7 U.S.C. 499a *et seq.* ("PACA") that began selling produce to Collazo Produce, Inc. ("Collazo Produce"),[1] also a licensed produce dealer under PACA, in September 2015. *See* Declaration of Daniel Blazer ("Blazer Dec."), Dkt. 34, at ¶ 6. Between December 15, 2017, and March 4, 2018, DeKalb sold and delivered to Collazo Produce wholesale quantities of produce, which had been shipped or moved in interstate commerce or contemplation thereof, in the total amount of $148,356.00. *See* Blazer Dec., Dkt. 34, at ¶15. After applying credits and all payments received,

---

[1] On May 15, 2018, Collazo Produce filed for chapter 11 bankruptcy relief in the case styled as *In re Collazo Produce,* Case No. 18-02459-5-SWH, United States Bankruptcy Court, Eastern District of North Carolina, Raleigh Division (the "Bankruptcy Proceeding"). On May 22, 2018, Collazo Produce filed its schedules reporting $557,084.44 in assets and $1,614,954.25 in debts.

the total principal amount of $66,833.66, plus interest and reasonable attorneys' fees, remains unpaid to DeKalb. *Id.*, at ¶25.

Wood's is also a licensed produce dealer under the PACA. *See* Declaration of Mark Wood ("Wood Dec."), Dkt. 35 at ¶5. Wood's first began selling produce to Collazo Produce in 2016, with Collazo Produce always having an open, unpaid balance with Wood's from July 1, 2016, through the bankruptcy of Collazo Produce in May 2018. Between February 4, 2018, and May 4, 2018, Wood's sold and delivered to Collazo Produce wholesale quantities of produce, which had been shipped or moved in interstate commerce or contemplation thereof, in the total amount of $87,886.25. *See* Wood Dec., Dkt. 35, at ¶15. After applying credits and all payments received, the total principal amount of $67,389.16, plus interest and reasonable attorneys' fees, remains unpaid to Wood. *Id.*, at ¶20.

Like DeKalb and Wood's, Pioneer is also a licensed produce dealer under the PACA. *See* Declaration of Lyle (Gene) Duff ("Duff Dec."), Dkt. 36 at ¶5. Pioneer first began selling produce to Collazo Produce in November 2013. Between November 27, 2018, and February 16, 2018, Pioneer sold and delivered to Collazo Produce wholesale quantities of produce, which had been shipped or moved in interstate commerce or contemplation thereof, in the total amount of $3,661.65. *See* Duff Dec., Dkt. 36 at ¶15. After applying credits and all payments received, the total principal amount of $2,781.57, plus interest and reasonable attorneys' fees, remains unpaid to Pioneer. *Id.*, at ¶20.

As reflected in the United States Department of Agriculture's response to a Freedom of Information Act request regarding the PACA licenses for Collazo Produce and United, which lists the principals of the licensees, the owner of Collazo Produce from 2009 to January 18, 2018, was Oscar N. Collazo. *See* Declaration of Mary Jean Fassett ("Fassett Dec."), Dkt. 37, at ¶4, and Dkt.37-1. At all pertinent times hereto, Oscar N. Collazo was also an owner and/or officer of United, an Illinois limited liability company with its principal place of business in Chicago, Illinois. United also

is and was a produce dealer licensed under the PACA.[2]  *See Id.* at 34-1; *see also* Dkt. 34 at ¶7. During the bankruptcy proceeding commenced by Collazo Produce (the "Bankruptcy Proceeding"), which will be discussed in more detail below, the banking records of Collazo Produce and United were subpoenaed from Bank of America pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. *See* Dkt. 37 at ¶9. United was also subpoenaed to produce documents regarding its financial dealings with Collazo Produce. *See* Dkt. 37, at ¶10. Bank of America's response to the subpoena established that Oscar N. Collazo was the authorized signatory on the bank accounts of both Collazo Produce and United through March 2018. *See* Dkt. 37, at ¶9. The banking records of Collazo Produce and United, along with United's response to the subpoena served upon it (Dkt. 37 at ¶10), establish that Oscar N. Collazo made numerous inter-company transfers of funds from Collazo Produce to United between 2016 and 2017 to pay off $248,000.00 of alleged "loans" owed to United, and to pay for $29,279.00 in produce allegedly purchased from United. *See id.* (attaching United's summary of the inter-company loan transfers between United and Collazo Produce produced in response to the Bankruptcy Proceeding subpoena, along with United's summary of alleged produce transactions between United and Collazo Produce produced in response to the subpoena).

      Castillo, who is not an infant, an incompetent, or in the military service, was an employee of Collazo Produce in 2017 according to Collazo Produce's payroll records produced during the Bankruptcy Proceeding. *See* Dkt.37, at ¶7. On or about January 18, 2018, Castillo agreed to purchase from Oscar N. Collazo all of the assets and assume all of the liabilities of Collazo Produce for a mere $100.00 pursuant to a Stock Purchase Agreement. *See id.* at ¶8. Castillo subsequently obtained a new PACA license for Collazo Produce in February 2018, which identified Castillo as the

---

[2] Collazo Produce and United functioned as distribution centers for produce imported by another affiliate, Mirasoles Produce USA, LLC, owned by Carlos Collazo, the brother of Oscar N. Collazo. *See* Dkt. 37-2, Exhibit B to the Declaration of Mary Jean Fassett filed contemporaneously herewith.

sole owner of Collazo Produce. *See* Dkt. 34 at ¶10. Thereafter, Castillo continued to operate Collazo Produce with false promises of payment to creditors like Plaintiffs for produce purchased and accepted from Plaintiffs until Collazo Produce collapsed. *See* Dkts. 34, 35, and 36 at ¶19. However, Oscar Collazo saw to it that his other business venture, United, was paid in full for all amounts due and owing from Collazo Produce prior to selling Collazo Produce to Defendant Castillo for $100.00, a valuation that Plaintiffs contend reflects the prior dissipation and transfer of trust assets in 2016 and 2017. *See* Dkt. 37 at ¶8.

Plaintiff DeKalb commenced this action on May 9, 2018. *See* Dkt. 1. On May 15, 2018, Collazo Produce commenced the Bankruptcy Proceeding in the United States Bankruptcy Court, Eastern District of North Carolina, Raleigh Division (the "Bankruptcy Court"). The Bankruptcy Court subsequently entered an order establishing a PACA Claims Procedure with a bar date set for the assertion of PACA trust claims against Collazo Produce. *See* Dkt. 37 at ¶6. DeKalb, Wood's and Pioneer each timely filed PACA trust claims in the Bankruptcy Proceeding for the principal, contract interest, and attorneys' fees of their bankruptcy counsel only, which claims were approved by the Bankruptcy Court on September 18, 2018, without objection. A total of $684,289.00 in valid PACA trust claims asserted by Plaintiffs and 12 other produce suppliers was approved by the Bankruptcy Court. *See* Dkt. 37 at ¶11. An auction of the Collazo Produce assets was held, with the net proceeds of only $141,879.01 distributed *pro rata* to DeKalb, Wood's, Pioneer and the 12 similarly situated trust creditors. *Id..*[3] Because of the significant shortfall in available Collazo Produce trust assets, DeKalb, Wood's and Pioneer have not been compensated in full for their trust claims.[4]

---

[3] The Court may take judicial notice of the records in the Collazo Produce bankruptcy proceeding. *See Capparelli v. AmeriFirst Home Imp. Fin. Co.,* 535 F.Supp.2d 554, 560, n.3 (E.D.N.C. 2008) (citing Fed. R. Evid. 201; *Colonial Penn Ins. Co. v. Coil,* 887 F.2d 1236, 1239 (4th Cir. 1989)).
[4] DeKalb owns a subsidiary company, World Shipping Direct, LLC ("World"), that provides international shipping services by ocean carrier and which engaged in transactions with Mirasoles Produce before and after the bankruptcy of Collazo Produce. As described in detail in the

The First Amended Complaint correctly naming Castillo as a party defendant was filed on June 20, 2018, and was served on Castillo on July 31, 2018. *See* Dkt. 8, 22. The Second Amended Complaint adding United as a party defendant for unlawful receipt and retention of trust assets was filed on August 10, 2018 and was served on United's registered agent on August 16, 2018. *See* Dkt. 20, 23. The Court defaulted Castillo and United on December 17, 2018. *See* Dkt. 30. United seeks to set aside the default; Castillo does not. As discussed below, Plaintiffs request that default judgment be entered against Defendants, jointly and severally, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and Section 5(c) of the PACA, 7 U.S.C. § 499e(c), for the remaining balances due on their trust claims as set forth below.

### ARGUMENT

**A. The Trust Provision of the PACA**

This matter arises primarily under the trust provision of the PACA, 7 U.S.C. § 499e(c). The PACA was enacted in 1930 "to suppress unfair and fraudulent practices in the marketing of fruits and vegetables in interstate and foreign commerce." 49 Fed. Reg. 45737. Produce buyers and sellers that enter into transactions for wholesale quantities of produce are considered "dealers" under and are subject to the PACA. *See* 7 C.F.R. §§ 46.2(m), (x). Collazo Produce was licensed and/or subject to license under the PACA at all pertinent times. Blazer Dec., at ¶¶6, 9.

In general, PACA requires produce dealers to make "full payment promptly" for any produce they purchase. 7 U.S.C. § 499b(4).

In 1984, the PACA was amended to "increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due has been received by them." 1984 U.S.C.C.A.N. 406; *see Nickey Gregory Company, LLC v. Agricap, LLC*, 597 F.3d 591,

---

Declaration of Daniel Blazer, Dkt. 34, DeKalb has received $46,000.00 from Mirasoles Produce that has been credited toward the trust debt owed to DeKalb by Collazo Produce.

594-5 (4th Cir. 2010); *see also Tanimura & Antle, Inc., et al. v. Packed Fresh Produce, Inc.*, 222 F.3d 132 (3d Cir. 2000); *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 159 (11th Cir. 1990) ("... the central purpose of Section 499e(c) is to ensure payment to trust beneficiaries"). To carry out this intent, section 499e(c) imposes a <u>statutory trust</u> on all produce-related assets, including the produce itself, other products derived therefrom, and any receivables or proceeds from the sale thereof, held by agricultural merchants, dealers, and brokers. 7 U.S.C. § 499e(c)(2). The burden is on the PACA debtor, or one standing in its shoes such as a lender like United, to establish when the trust began and its' duration; otherwise, it is assumed that the trust is established upon the commencement of the produce purchaser's business and is continually in existence throughout the life of the purchaser's business. *Tanimura & Antle, Inc.*, 22 F.3d 132; *see In re Kornblum & Co., Inc.*, 81 F.3d 280 (2d Cir. 1996); *In re Atlantic Tropical Market Corp.*, 118 B.R. 139 142 (Bkrtcy. S.D. Fla. 1990).

The PACA trust is a remedial statute to be construed broadly by the courts to effectuate its purposes. *Hull Co. v. Hauser's Foods, Inc., 924 F.2d 777, 782 (8th Cir. 1991).* It is well established that PACA is governed by general trust principles to the extent they do not conflict with the language of the statute, the clear intent of Congress in enacting the statute, or the accompanying regulations. *Nickey Gregory Company, LLC v. Agricap, LLC*, 597 F.3d 591, 595 (4th Cir. 2010); *A&J Produce Corp. v. Bronx Overall Econ. Dev. Corp.*, 542 F.3d 54 (2d. Cir. 2008); *In re Kornblum & Co., Inc.*, 81 F.3d 280 (2d Cir. 1996);*C.H. Robinson Co. v. Trust Co. Bank*, 952 F.2d 1311 (11th Cir. 1992); *Atlantic Coast Produce, Inc. v. McDonald Farms*, 2005 U.S. Dist. LEXIS 14993 (W.D. Va. 2005). Similarly, the law is well settled that the "corporate entity may be disregarded when the failure to do so would enable the corporate device to be used to circumvent a statute." *Bruhn's Freezer Meats v. U.S. Department of Agriculture*, 438 F.2d 1332, 1343 (8th Cir,

1971) citing *Schenley Distillers Corp. v. United States*, 326 U.S. 432, 437 (1945); *see also* 1 W. Fletcher, Cyclopedia of the Law of Private Corporations, Section 45 (1963).

### 1). The Scope of the Trust.

The trust is a non-segregated "floating" trust that applies to all of the buyer's produce in inventory and all proceeds from the sale of produce. The commingling of trust assets does not defeat the trust. 7 C.F.R. 46.46(b). In addition, under common law trust principles, the trust extends to any other assets acquired from a commingled account. *Sanzone-Palmisano Co. v. M. Seaman Enterprises, Inc.*, 986 F.2d 1110, 1013 (6th Cir. 1993); *In re Kornblum & Co., Inc.*, 81 F.3d 286-287, *In re Atlantic Tropical*, 118 B.R. at 142-143. While commingling of trust assets is contemplated, the burden of tracing the origin of any disputed assets is on the PACA debtor. *See In re Kornblum & Co., Inc.*, 81 F.3d at 287 ("[T]he produce dealer bears the burden of demonstrating that an asset was not acquired with the proceeds from the sale of particular produce, or from the sale of a particular produce-related asset.") (*Sanzone-Palmisano Co. v. M. Seaman Enterprises, Inc.*, 986 F.2d 1110, 1012 (6th Cir. 1993) ("[T]he trust beneficiary need not prove that it, and not another produce supplier, was the source of the produce or produce-related assets.")); *In re Fresh Approach, Inc.*, 51 B.R. 412 (Bkrtcy. N.D. Tex. 1985) at 422 (same); *see also International Bhd. of Teamsters v. United States*, 431 U.S. 324, 359 n. 45, 97 S.C t. 1843, 1867 n. 45, 52 L.Ed.2d 396 (1977) ("Presumptions shifting the burden of proof are often created to reflect judicial evaluations of probabilities and to conform with a party's superior access to the proof."); *In re Atlantic Tropical Market Corp.*, *supra* at 142 (PACA trust creditors entitled to truck and other equipment because debtor did not prove these assets were acquired with non-trust monies); *Atlantic Coast Produce, Inc. v. McDonald Farms*, 2005 U.S. Dist. LEXIS 14993 (W.D. Va. 2005).

The *Sanzone-Palmisano* court characterized this burden as nearly *impossible* to carry

once trust proceeds have been commingled with non-trust proceeds.

> "We hold that a purchaser, or PACA debtor, has the burden of showing that disputed assets were not acquired with proceeds from the sale of produce or produce-related assets. . . . [I]n the conventional case, where the produce was sold at a gross profit, the proceeds were commingled in a general fund, and the general fund was used to buy more inventory, the PACA debtor will be unable to meet its burden, and the produce supplier will prevail. We believe that this is the outcome that Congress intended."

*Sanzone-Palmisano*, 986 F.2d at 1014.

As set forth in *Kornblum*, in order to show that an asset is free from the PACA trust, the PACA debtor, or one who seeks to stand in its shoes, such as a lender or closely held affiliate, has the burden of proving either: (1) no PACA trust existed when the interest was acquired; or (2) although a PACA trust existed at the time, the interest was not acquired with trust assets; or (3) although a PACA trust existed when the interest was acquired, and the interest was acquired with trust assets, all unpaid sellers of produce were paid in full prior to the transactions involving the unpaid PACA trust creditors herein. *In re Kornblum & Co., Inc.*, 81 F.3d at 287.

Furthermore, agricultural merchants and dealers "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities." 7 CFR 46.46(e)(1). "Any act or omission inconsistent with this responsibility, including dissipation or trust assets, is unlawful and in violation of [7 U.S.C. §499b]." *Id.*; *see Nickey Gregory Company, LLC v. Agricap, LLC*, 597 F.3d at 595.

Produce sellers have a right to recover the trust assets over all other creditors, including secured creditors. 7 U.S.C. §499e(c)(1); *Nickey Gregory Company, LLC v. Agricap, LLC*, 597 F.3d at 598. If the seller of produce is not paid promptly, the trust assets must be preserved and the seller's claims prime those of other secured and unsecured creditors for the full amount of the claim. *Reaves Brokerage Co. Inc. v. Sunbelt Fruit & Vegetable Company, Inc.,* 336 F.3d 410 (5th Cir. 2003) citing

*Gargiulo v. G.M. Sales, Inc.,* 131 F.3d 995, 999 (11th Cir. 1997) (PACA puts sellers in position superior to all other creditors). Only a bona fide purchaser, who takes trust property for value <u>and</u> without notice of the breach of trust, may retain PACA trust assets without liability to trust beneficiaries. *Nickey Gregory Company, LLC v. Agricap, LLC*, 597 F.3d at 604; *Reaves Brokerage Co., Inc., v. Fidelity Factors LLC,* 336 F.3d 410, 413-414 (5th Cir. 2003); *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.,* 97 F.3d 1063, 1067 (2d Cir. 1995); *Consumers Produce Co., Inc. et al. v. Volante Wholesale Produce, Inc., et al.*, 16 F.3d 1374, 1380 (3rd Cir. 1994).

2). <u>Preserving PACA Trust Rights</u>

Produce suppliers must provide notice to the buyer of their intent to preserve trust benefits, and licensed dealers may do so by including the following language on the face of their invoices: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received." 7 U.S.C. § 499e(c)(4). DeKalb, Wood's and Pioneer properly preserved their trust rights by including the requisite language on their respective invoices to Collazo Produce. *See* Blazer, Wood's and Duff Decs., at ¶17, Exhibit I.

**B. <u>Personal Liability of Defendant Juan Castillo Under The PACA</u>.**

Individuals who are in a position to oversee the proper application of the PACA trust assets, such as Defendant Castillo, who do not preserve the trust assets for the beneficiaries, for whatever reason and however innocent, have breached a fiduciary duty and are personally liable for that tortious act. *See Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701 (2d Cir. 2007) (PACA trustee cannot

escape all liability for entering into a transaction that results in a large loss of PACA assets merely by showing the transaction was commercially reasonable); *Golman-Hayden Co., Inc. v. Fresh Source Produce, Inc.*, 217 F.3d 348 (5th Cir. 2000) (an individual in a position to control PACA trust assets is personally liable under PACA regardless of whether he exercised that control); *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997) ("We agree that individual shareholders, officers and directors of a corporation who are in a position to control PACA trust assets and who breach their fiduciary duty to preserve these assets may be held personally liable under the Act."); *Red's Market v. Cape Canaveral Cruise Line, Inc.*, 181 F. Supp. 2d 1339 (M.D. Fla. 2002) (individual in control of PACA trust assets is liable for failure to preserve trust res without regard to whether failure was intentional or whether individual was responsible corporate officer); *see also N.P. Deoudes, Inc. v. Snyder, (In re Snyder)*, 184 B.R. 473 (D. Md. 1995) (personal liability may be imposed on the controlling person of a corporation when trust assets are used for any purpose other than paying trust claims); *Bronia, Inc. v. Ho.*, 873 F. Supp. 854, 861 (S.D.N.Y. 1995) ("primary actor responsible for [the corporation's] failure to live up to its fiduciary responsibilities under the PACA" will be personally responsible for the corporations' breach of trust); *In re Harper*, 150 B.R. 416 (Bankr. E.D. Tenn. 1993) (corporate officer found liable because "when there are fiduciary responsibilities of a corporation, it is the employee or officer responsible for implementing the fiduciary responsibilities who is liable for any acts of defalcation").

The bases for this holding are the common law trust principles that (1) fiduciary duties are not carried out by a business or corporation, but by the individuals who are responsible for the operation of the corporation, *Coosemans Specialties, Inc.*, *supra*; *In re Harper*, *supra*, and (2) trustees are under a duty to the beneficiary to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property. *Restatement Second of Trusts* § 174.

As the owner of Collazo Produce who assumed the debts and liabilities of Collazo Produce as part of his acquisition, Castillo was responsible for ensuring that the PACA trust assets were not dissipated and were freely available to pay DeKalb, Wood's and Pioneer. *Golman-Hayden Co., Inc.*, *supra; Red's Market*, *supra*. Having failed to fulfill his duties as trustee, he is liable to DeKalb, Wood's and Pioneer, the trust beneficiaries, for the produce sales in the aggregate amount of $137,884.47, plus contract interest and reasonable attorneys' fees and costs, under the PACA.

### C. **Constructive Trust Liability of United to DeKalb, Wood's and Pioneer.**

Defendant United is liable to Plaintiffs for the full amount of the shortfall due from Collazo Produce under the principles of a constructive trust. Collazo Produce and United were closely related entities that knew via their common owner, officer and bank account signatory, Oscar N. Collazo, that Collazo Produce trust assets were transferred in breach of the PACA trust to maintain and improve United's assets when Collazo Produce had unpaid trust creditors who had entered into legitimate arms-length produce transactions with Collazo Produce. There is no dispute that Oscar N. Collazo was the sole owner of Collazo Produce in 2016 through January 18, 2018, the co-owner of United from its inception in 2016 to, at the earliest, November 13, 2017, and the sole bank account signatory for Collazo Produce and United in 2016 through March 2018. *See* Dkt. 37 at ¶¶4, 9. Similarly, it cannot be disputed that $277,299.00 in PACA trust assets of Collazo Produce were siphoned off and transferred by Oscar N. Collazo to his other company, United, in repayment of "loans" totaling $248,000.00, with an additional $29,279.00 for produce allegedly purchased from United. *See* Dkt. 37 at ¶10. The United banking records establish that Oscar N. Collazo used the operating funds of United and Collazo Produce interchangeably to suit the cash flow purposes of the two corporate entities, with United consequently paid in full but Plaintiffs remaining unpaid. *See* Dkt. 37 at ¶¶ 9-10.

Because the PACA trust is a single, undifferentiated trust, the trust provisions of PACA do not allow a PACA trustee like Collazo Produce to engage in a Ponzi-like scheme to benefit its lender/affiliated entity and shift unpaid produce trust debt from earlier suppliers in 2016 and 2017 to later suppliers at the end of 2017 and 2018, while making payments with trust funds to the trustee's lender and affiliated entity. Applying the *Kornblum* test here, in order to show that Collazo Produce trust assets paid to United were free from the PACA trust, United has the burden of proving either: (1) no Collazo Produce PACA trust existed when each payment were made; or (2) although a PACA trust existed at the time, the payments by Collazo were not made with trust assets; or (3) although a PACA trust existed when each payment was made, and the payment was made with trust assets, all unpaid sellers of produce at the time of payment were subsequently paid in full prior to the transactions involving the unpaid PACA trust Plaintiffs herein. United cannot make such a showing because Plaintiff Wood's was: 1) owed by Collazo Produce in July 2016 for unpaid produce when the transfers of funds to United Produce were commenced; 2) owed for unpaid produce every day thereafter; and 3) is still owed for unpaid produce supplied to Collazo Produce today. *See* Dkt. 35 at ¶9.

As discussed below, the trust assets of Collazo Produce and United are now hopelessly commingled, with all of United's assets presumed subject to the Collazo Produce PACA trust.

### D. The Commingling of United and Collazo Produce Trust Assets.

The Restatement (Second) of Trusts states that, under general trust principles, a trust beneficiary is entitled to enforce either a constructive trust or an equitable lien against property acquired by disposition of trust property by the trustee that the trustee still holds:

> (1) Where the trustee by the wrongful disposition of trust property acquires other property, the beneficiary is entitled at his option either to enforce a constructive trust of the property so acquired or to enforce an equitable lien upon it to secure his

claim against the trustee for damages for breach of trust, as long as the product of the trust property is held by the trustee and can be traced.

Restatement (Second) of Trusts §202(1) (1959).

Here, the siphoned-off funds and trust assets of Collazo Produce were transferred by Oscar N. Collazo into United's operating accounts and were presumably used to acquire and retain more inventory and assets for United. It is undisputed that Oscar N. Collazo was an owner of United at the time of the transfers and remained as a signatory on United's bank accounts for four months following his alleged resignation. *See* Dkt. 34 at ¶¶ 7-8; *see also* Dkt. 37 at ¶¶ 4 and 9. Because of the commingling of Collazo Produce trust funds with United trust funds, United cannot point to any current inventory, proceeds, or receivables and contend that the assets are entirely free of the Collazo Produce PACA trust. By diverting the Collazo Produce trust assets to the maintenance of United and its assets, Oscar N. Collazo subjected United's assets to a constructive trust under ordinary trust principles. *See Atlantic Coast Produce, Inc. v. McDonald Farms*, 2005 U.S. Dist. LEXIS 14993 *14 (W.D.Va. 2005); *see also In re Kornblum & Co.,* 81 F.3d 280 (2d. Cir. 1996). Accordingly, United is liable for the entire PACA trust debt claimed in this action.

### E.     United Has No Bona Fide Purchaser Defense.

The Restatement (Second) of Trusts states that, under general trust principles, a transferee that is a bona fide purchaser will not be deprived of the proceeds even if the property was transferred in breach of the trust:

> (1) If the trustee in breach of trust transfers trust property to, or creates a legal interest in the subject matter of the trust in, a person who takes for value and without notice of the breach of trust, and who is not knowingly taking part in an illegal transaction, the latter holds the interest so transferred or created free of the trust, and is under no liability to the beneficiary.

Restatement (Second) of Trusts §284(1) (1959)).

The appropriate legal standard for determining whether a third-party transferee of PACA

trust assets has notice that a produce purchaser is breaching the PACA trust is set forth in Restatement (Second) of Trusts §297. See *Consumers Produce Co., Inc. et al. v. Volante Wholesale Produce, Inc., et al.*, 16 F.3d 1374, 1382 (3rd Cir. 1994). Section 297 sets forth a "knew or should have known" standard for the breach of a trust:

> A third person has notice of a breach of trust not only when he knows of the breach, but also when he should know of it; that is when he knows facts which under the circumstances would lead a reasonably intelligent and diligent person to inquire whether the trustee is a trustee and whether he is committing a breach of trust, and if such inquiry when pursued with reasonable intelligence and diligence would give him knowledge or reason to know that the trustee is committing a breach of trust.

Restatement (Second) of Trusts §297(a)). This standard was applied by the Third Circuit in *Consumers Produce* in the context of a PACA trust:

> Thus, a duty of inquiry arises when a person knows facts which under the circumstances suggest (1) that the person is dealing with a trustee and (2) that the trustee may be committing a breach of trust. If a duty of inquiry exists, and such inquiry would have disclosed the breach of trust, a person "should have known" of the breach of trust.
>
> The existence and the extent of a duty of inquiry depend on the character of the transaction and the character of trust property… In the PACA context, a duty of inquiry arises when a third-party transferee has knowledge that a produce purchaser/trustee is not paying produce suppliers or is in financial difficulty.

*Consumers Produce Co., Inc. v. Volante,* 16 F.3d 1374, 1383 (emphasis added) (internal citations omitted).

When trust assets are diverted to the maintenance of real property assets and other business ventures of a third-party transferee who does not have bona fide purchaser status, the real property assets and assets of the other business ventures are subjected to a constructive trust under ordinary trust principles. *In re Kornblum & Co.*, 81 F.3d 280 (2d. Cir. 1996); *In re Atlantic Tropical Market Corp.*, 118 B.R. 139 (Bkrtcy. S.D. Fla. 1990); *In re Al Nagelberg & Co., Inc.*, 84 B.R. 19, 21 (Bkrtcy. S.D.N.Y. 1988) citing III A. Scott, *Scott on Trusts*, §202 at 1659 (3d ed. 1967)

(beneficiaries to a trust may follow trust property that has been diverted, regardless of the form into which it has been converted or in whose hands it is); *Strube Celery & Vegetable Co. v. Mike Shapiro Frozen Foods, Inc., et al.*, 1989 U.S. Dist. LEXIS 10732 (1989) (citations omitted).

United cannot claim bona fide purchaser status here as it is unable to meet the "notice" prong of the bona fide purchaser defense due to Oscar N. Collazo's status as a common owner and/or officer of United and Collazo Produce in 2016 and 2017. United had notice via its common owner, Oscar N. Collazo, that the transfers of Collazo Produce trust assets to United were made in breach of the PACA trust, rendering the assets less than freely available to Collazo Produce's legitimate third-party suppliers like Plaintiffs. *See* Dkt. 37 at ¶9; *see Atlantic Coast Produce, Inc. v. McDonald Farms*, 2005 U.S. Dist. LEXIS 14993 *14 (W.D.Va. 2005) (common ownership of PACA trustee and third-party transferees renders bona fide purchaser defense unavailable). Accordingly, the bona fide purchaser defense is not available to United, and United is liable for the entire trust debt owed to Plaintiffs due to the hopelessly commingled assets of United and Collazo Produce.

   **F.**  **Interest and Attorneys' Fees Due DeKalb, Wood's, and Pioneer.**

The trust provision of PACA directs that a dealer who receives produce must hold the produce, all inventories derived from the produce, and receivables from the sale of such produce in trust "for the benefit of all unpaid suppliers or sellers of such commodities . . . until full payment of the *sums owing in connection with* such transaction has been received." 7 U.S.C. § 499e(c)(2) (emphasis added).

Interest and attorneys' fees are "sums owing in connection with" the transaction to which a PACA claimant is entitled; provided that a "contractual right arose from the exchange of contractual communications and [a PACA claimant's] invoices, then [the PACA claimant] has a

right under PACA to enforce the full scope of its perishable agricultural commodities contract." *Middle Mountain Land and Produce, Inc. v. J.R. Simplot Company*, 307 F.3d 1220, 1224-25 (9th Cir. 2002); *see also Country Best v. Christopher Ranch, LLC,* 361 F.3d 629, 632 (11th Cir. 2004) (finding that the term "sums owing in connection with" includes "not only the price of commodities but also . . . attorneys' fees and interest that buyers and sellers have bargained for in their contracts."). Pursuant to the invoices at issue, DeKalb, Wood's and Pioneer are each entitled to interest at the rate of 1.5% per month (18% *per annum*). *See* Dkts. 34, 35, and 36 at ¶18. Accordingly, interest at the rate of 1.5% per month (18% *per annum*) through January 31, 2019, on the total principal owed to each Plaintiff is as follows: $11,186.56 to DeKalb; $9,681.79 to Wood's, and $494.72 to Pioneer. *See* Dkts. 34, 35, and 36 at Exhibit F.

Plaintiffs also seek an award of attorneys' fees and costs incurred with respect to the instant proceeding. Case law supports an award of attorneys' fees to PACA trust creditors who have the requisite attorney fee language on their invoices as "sums owing in connection with such transactions." *L & M Companies, Inc. v. Biggers III Produce, Inc.*, 2010 WL 1439411, at *9 (W.D.N.C. Apr. 9, 2010), citing *Nickey Gregory Co., LLC v. AgriCap, LLC*, 592 F.Supp.2d 862, 878 (D.S.C. 2008); see *Middle Mountain Land and Produce, Inc. v. J.R. Simplot Company*, 307 F.3d 1220, 1224-25 (9th Cir. 2002); *see also Country Best v. Christopher Ranch, LLC,* 361 F.3d 629, 632 (11th Cir. 2004). DeKalb, Wood's and Pioneer each have a provision for an award of attorney's fees on their invoices. As set forth in the Declaration of Mary Jean Fassett, the attorneys' fees and costs incurred by Plaintiffs in this proceeding were split pro rata among them based upon the principal amount of their PACA trust claims. Accordingly, Plaintiffs seek awards of reasonable attorneys' fees as follows: $32,977.74 to DeKalb; $15,082.85 to Wood's, and $630.93

to Pioneer. *See* Declaration of Mary Jean Fassett, Dkt. 37, filed contemporaneously herewith, and the Declaration of Leslie Lane Mize filed, Dkt. 38, also filed contemporaneously herewith.

## CONCLUSION

For the foregoing reasons, DeKalb, Wood's and Pioneer request that the Court (1) enter Default Judgment against Defendants Castillo and United, jointly and severally, pursuant to the trust provision of the PACA, 7 U.S.C. § 499e(c), for their failure to pay for wholesale quantities of produce and other goods as follows:

a). In favor of DeKalb in the principal amount of $66,833.66, and interest through January 31, 2019, at the rate of 18% per annum, in the amount of $11,186.56, and attorneys' fees and costs in the amount of $32,977.74, for a total judgment amount of $110,997.96, plus post-judgment interest, and to grant DeKalb such other and further relief as the Court deems just and proper;

b). In favor of Wood's in the principal amount of $67,389.16, and interest through January 31, 2019, at the rate of 18% per annum, in the amount of $9,681.79, and attorneys' fees and costs in the amount of $15,082.85, for a total judgment amount of $92,153.80, plus post-judgment interest, and to grant Wood's such other and further relief as the Court deems just and proper; and

c). In favor of Pioneer in the principal amount of $2,781.57, and interest through January 31, 2019, at the rate of 18% per annum, in the amount of $494.72, and attorneys' fees and costs in the amount of $630.93, for a total judgment amount of $3,907.22, plus post-judgment interest, and to grant Pioneer such other and further relief as the Court deems just and proper.

Respectfully submitted this 25th day of January 2019.

                    NELSON MULLINS RILEY & SCARBOROUGH LLP

                    By:   /s/ Leslie Lane Mize
                            Leslie Lane Mize
                            North Carolina Bar No. 32790
                            4140 Parklake Avenue, Suite 200
                            Raleigh, North Carolina 27612
                            Phone: (919) 877-3849
                            Fax:    (919) 877-3983
                            leslie.mize@nelsonmullins.com
                            Local Civil Rule 83.1 Counsel

                            and

                            McCARRON & DIESS

                            Mary Jean Fassett
                            Md. Federal Bar No. 08618
                            4530 Wisconsin Avenue, NW, #301
                            Washington, D.C. 20016
                            Phone: (202) 364-0400
                            Fax:    (202) 364-2731
                            mjf@mccarronlaw.com

                            *Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

       I, the undersigned attorney, do hereby certify that on January 25, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

K. Matthew Vaughn
STEVENS MARTIN VAUGHN & TADYCH, PLLC
1101 Haynes Street, Suite 100
Raleigh, NC 27604
Email: matt@smvt.com

and that a copy of the foregoing was served upon Defendant Juan Antonio Castillo by first class U.S. Mail, in a postage prepaid envelope addressed as follows:

Juan Antonio Pacheco
a/k/a Juan Antonio Castillo
1008 Essex Forest Drive
Cary, NC 27518-9262

                              NELSON MULLINS RILEY & SCARBOROUGH LLP

                              By:   /s/ Leslie Lane Mize
                                     Leslie Lane Mize
                                     North Carolina Bar No. 32790
                                     4140 Parklake Avenue, Suite 200
                                     Raleigh, North Carolina 27612
                                     Phone: (919) 877-3849
                                     Fax:   (919) 877-3983
                                     leslie.mize@nelsonmullins.com
                                     Local Civil Rule 83.1 Counsel

                                     and

                                     McCARRON & DIESS

                                     Mary Jean Fassett
                                     Md. Federal Bar No. 08618
                                     4530 Wisconsin Avenue, NW, #301
                                     Washington, D.C. 20016
                                     Phone: (202) 364-0400
                                     Fax:   (202) 364-2731
                                     mjf@mccarronlaw.com

                                   *Attorneys for Plaintiffs*